WARNER, Judge.
The appellant, a horse track veterinarian, challenges the order of a hearing officer of the Division of Administrative Hearings denying appellant’s challenges to emergency and permanent rules of the Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering (“Division”). The rules in question were promulgated in 1992, right after the legislative repeal of most of the statutes regulating the horse and dog racing industry. The appellant claims that the Division had no authority to formulate the rules. We hold that the Division did have authority to promulgate its rule respecting the validation of appellant’s occupational license. However, we also hold that the Division’s rule regarding the prohibition of corrupt or fraudulent practices in relation to racing exceeded the authority the Division had at the time of the rule’s promulgation and was vague, and as to this, the order must be reversed.
In another proceeding, the appellant, who obtained a three year occupational license from the Division in 1991, was charged with conspiring with others to influence the performance of a horse by offering to assist the owner in the injection of an illegal drug.[1] The acts constituting the violations occurred on November 11, 1992, and April 2, 1993. The appellant then filed his own petition challenging the validity of the Division’s emergency rules 7EER92-6 and 7EER92-2(18) and their subsequent respective permanent codification in Florida Administrative Code Rules 61D-1.006 and 61D-1.002(18). Appellant contended the Division did not have authority to enact these rules due to the conundrum in which the Division found itself after the 1992 legislative session.
Previously, in May 1991, the Legislature had repealed most of the pari-mutuel wagering regulation in Florida Statutes, chapter 550, effective July 1, 1992. The 1992 session ended without the Legislature passing any law to reenact the repealed provisions. Thus, as of July 1, 1992, only the taxing aspects of the law remained, together with certain laws governing the use of alcohol, the drugging of animals, and the fixing of races. Specifically repealed was section 550.02(3), which granted to the Division general rule-making authority for the supervision of all racing, and section 550.10, which provided for the issuance of occupational licenses and their cost.
When the Legislature failed to reenact the racing statutes, the Governor called on the Division to enact emergency rules to regulate racing until a special session could be held on the matter. The Division promulgated rules in order to effectuate those statutes which were not repealed by the 1991 legislation. These included the rules in question in these proceedings. The issue presented is whether the Division exceeded its authority in promulgating the specific rules in question.
We must first examine the statutes and the rules promulgated by the Division. The remaining statutes which are relevant to this appeal, after the legislative repeal of most of chapter 550, consist of sections 550.2405 and 550.241 (1991). Section 550.2405 is titled “Use of controlled substances or alcohol prohibited; testing of certain occupational licensees; penalty.” It first provides:
(1) The use of a controlled substance as defined in chapter 893 or of alcohol by any occupational licensees officiating at or participating in a race or jai alai game is prohibited.
§ 550.2405(1), Fla.Stat. (1991) (emphasis supplied). Other provisions of the statute state that the holding of an occupational license shall be deemed consent to submit to tests for controlled substances and alcohol. Penalties are also delineated, including loss of *1301 license and fines. Section 550.241, Florida Statutes (1991), prohibits the racing of animals with any drug or stimulant. It authorizes the Division of Pari-mutuel Wagering to promulgate rules regarding the drugging of animals. It also provides that “[ajdministra-tive action may be taken by the division against occupational licensees responsible pursuant to rule of the division for the condition of animals which have been impermissi-bly medicated or drugged in violation of this section.” § 550.241(2), Fla.Stat. (1991) (emphasis supplied). The statute also provides: “The Division of Pari-mutuel Wagering shall adopt and enforce rules to implement this section.” § 550.241(6)(a), Fla.Stat. (1991). “Occupational licensee” or “license” is referred to seven times in the statute.
Emergency Rule 7EER92-6 “Pari-mutuel Occupational Licenses” provides in section (l)(a) that three year licenses, such as appellant’s license, issued prior to the adoption of the rule are validated. The permanent rule, 7E-16.006 (codified as Florida Administrative Code 61D-1.006), which replaced the emergency rule also had a similar provision validating the three year licenses.
The second emergency rule in question was rule 7EE92-2(18), which provided:
No person shall conspire with any other person for the commission of, or connive with any other person in any corrupt or fraudulent practice in relation to racing or jai alai nor shall he commit such an act on his own account.
This, too, was made permanent in December 1992 when the Legislature finally passed a new racing statute. Florida Administrative Code 61D-1.002(18).
The hearing officer first found that the appellant did not have standing to challenge emergency rule 7EER92-6 because it had already expired and been replaced with a permanent rule by the time of appellant’s challenge. We disagree. The Division filed its action to suspend appellant’s license which had been obtained in 1991 and would expire in 1994. One of the violations charged against the appellant occurred during the period when the emergency rules were enacted. If, because of the repeal of the legislation the appellant’s license was a nullity until the reenactment of the statutes and the permanent rules, then the Division had no authority to take action against the license for violations during this period. Therefore, the appellant’s challenge is not moot. Nevertheless, we find that the Division did have the authority, to promulgate rules regarding occupational licenses, as specifically granted by section 550.241(6)(a) and its implied authority to make rules to the extent necessary to implement the unrepealed statutes. See Department of Prof. Reg. v. Society of Prof. Land Surveyors, 475 So.2d 939 (Fla. 1st DCA 1985). Both sections 550.2405 and 550.241 are replete with references to occupational licensees and the Division’s duty to adopt rules and regulations with respect to these statutes. Although the general licensing statute, section 550.10, had been repealed, the remaining statutes contained sufficient express and implied authority to provide for occupational licenses.
Turning to the final issue to be addressed, the appellant makes two challenges to emergency rule 7EER92-20.8). He claims both that the Division exceeded its grant of rule-making authority and that the rule is vague. As authority for its enactment, the Division cites sections 120.633, 550.16(1), and 550.241 of the Florida Statutes. We do not regard section 120.633 as authority for the Division to enact substantive rules governing the conduct of racing. That section is part of the Administrative Procedures Act. It provides an exemption to hearing and notice requirements of section 120.57(l)(a) for stewards, judges and boards of judges for hearings to impose fines or suspensions provided for by rules of the Division of Pari-mutuel Wagering. However, it authorizes the Division to enact alternative rules of procedure for the holding of such hearings. This is also consistent with section 550.02(3)(b), Florida Statutes (1991), which was repealed by the 1991 Legislature and reenacted in 1992 as section 550.0251(5). It *1302 gave to the Division the authority to prescribe procedural matters not in conflict with section 120.633. Thus, it does not provide authority for substantive rules.
Section 550.16(1) also furnishes no authority. That section governs the sale of betting tickets at tracks and provides that their sale and purchase shall be under the supervision of the Division. Finally, section 550.241 prohibits the racing of animals that have been administered drugs. These two sections relate to specific aspects of the racing industry. They do not relate to all of its aspects. The statutes in place at the time of the adoption of the emergency rule do not comprehensively deal with the regulation of the entire industry.
Before the 1991 repeal of most of chapter 550, the Division was granted comprehensive rule-making authority with respect to racing:
The division shall make rules and regulations for the control, supervision, and direction of all applicants, permittees, and licensees and for the holding, conducting and operating of all racetracks, race meets, and races held in this state....
§ 550.02(3)(a), Fla.Stat. (1991). While rule-making authority may be implied to the extent necessary to properly implement a statute governing the agency’s statutory duties and responsibilities, see Fairfield Communities v. Florida Land and Water Adjudicatory Comm’n, 522 So.2d 1012 (Fla. 1st DCA 1988), it cannot enlarge, modify or contravene provisions of a statute. Department of Natural Resources v. Wingfield Dev. Co., 581 So.2d 193 (Fla. 1st DCA 1991). As Judge Zehmer wrote in Capeletti Bros., Inc. v. Department of Transp., 499 So.2d 855 (Fla. 1st DCA 1986): “[C]ourts should not rewrite legislation to cure an omission by the legislature just because it seems to fit overall legislative policy. An administrative rule cannot be contrary to or enlarge a provision of a statute, no matter how admirable the goal may be.” Id. at 857. We cannot ascribe the comprehensive regulatory authority to the Division which it appropriated through enactment of its rules simply because it would be in the public interest to do so. Here, the Legislature, the ultimate body to express the public’s will, allowed most of the Division’s regulatory power to expire. It did so in light of significant pressure from the Governor to pass a new statute before the end of the 1992 session. In this era of the downsizing of government, we cannot consider the repeal of the broad rule-making authority of an executive agency as a meaningless act.
Rule 7EER92-2(18) is an exceedingly broad rule, covering far more acts than the statutes from which the Division attempts to glean its authority. The rule enlarges the provisions of the statutes on which it is based. Thus, the Division exceeded its grant of rule-making authority in the promulgation of rule 7EER92-2(18). See § 120.52(8)(b)— (c), Fla.Stat. (1991).
Finally, we also hold that the rule is vague. “[A] government restriction is vague if it ‘either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.’” Bouters v. Florida, 659 So.2d 235, 238 (Fla.1995), cert. denied, — U.S. -, 116 S.Ct. 245, 133 L.Ed.2d 171 (1995) (citation omitted). The rule in question punishes corrupt or fraudulent practices without ever defining them or referring to a standard by which a practice may be judged to be corrupt or fraudulent. See State v. DeLeo, 356 So.2d 306 (Fla.1978). We hold that, because of its vagueness, the rule is an invalid exercise of delegated legislative authority. § 120.52(8)(d), Fla.Stat. (1991). Both the emergency rule and the permanent rule suffer from the same impediment and are invalid.
For the foregoing reasons, we reverse the order of the Division of Administrative Hearings, and remand for entry of an order consistent with this opinion.
KLEIN and SHAHOOD, JJ., concur.

. We glean the substance of the charges from the earlier appearance of this case in our court. Witmer v. Department of Business & Prof. Reg., 631 So.2d 338 (Fla. 4th DCA 1994).